UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TIMOTHY B. PLEASANT,<br>*Plaintiff*,<br><br>v.<br><br>MIGUEL CARDONA,<br>*Defendant*. | CASE NO. 3:20-cv-74<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter comes before the Court on a motion for summary judgment, Dkt. 22, filed by Defendant Miguel Cardona, Secretary of the U.S. Department of Education.

Plaintiff Timothy B. Pleasant alleges that DOE violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706, by not discharging student loans taken out under his name. Pleasant claims that his ex-wife, Heather Pleasant, took out about $30,000 in student loan debt in his name without his knowledge, which he says he discovered during their divorce proceedings in 2014. Pleasant disputed the loans with DOE and requested that the agency discharge the loans due to identity theft. In a final administrative decision, DOE denied the request. Pleasant then filed a complaint in this Court, seeking a judicial determination that DOE's decision violated the APA.

Now, DOE moves for summary judgment. There are two primary issues: first, whether DOE applied the correct regulations; and second, whether DOE applied its regulations in the correct manner. For the reasons below, the Court holds that DOE applied the correct regulations and applied them in a manner that was neither arbitrary nor capricious. Thus, the Court will grant DOE's motion for summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

The administrative record (Ex. 2 to Dkt. 23) (AR) serves as the complete factual predicate for the Court's review[1] and establishes the following facts.

### A. Pleasant Sought Discharge from DOE

In 2016, Timothy B. Pleasant petitioned DOE for administrative discharge of student loans taken out in his name. AR at 12–13. DOE's administrative discharge process allows borrowers (or alleged borrowers) relief from their loans in certain circumstances. *See* 34 C.F.R. § 685.215. One of those circumstances—the one under which Pleasant sought discharge—is identity theft. 34 C.F.R. § 685.215(c)(5)(i). Pleasant told DOE that he believed his now ex-wife, Heather Pleasant, took out about $30,000 in student loans in his name. AR at 19–20, 68–69. He further claimed that he never knew about or benefitted from the loans. *Id.* at 19–20. He acknowledged that he had received financial aid but said that he had only received aid in the form of Pell Grants, not loans. *Id.* at 19.

### B. DOE Denied Pleasant's Request

In April 2016, DOE issued a final administrative decision that denied Pleasant's request and held him accountable for the debt. AR at 7–8. The decision found that "[d]emographic information for Timothy Pleasant as provided in this investigation substantiates that [he was] the person who applied for the loan and received notices and disclosures advising [him] that the loan was made and how to cancel all or a portion of the loan." *Id.* at 16. The record produced by DOE's investigation reflects the facts that follow.

---

[1] The Court relies *only* on the administrative record. The Court does not rely on DOE's submission of the declaration of Christopher Bolander, Ex. 1 to Dkt. 23, because the Court may not go beyond the administrative record in this case. *See Dep't of Commerce v. New York,* 588 U.S. ___; 139 S. Ct. 2551, 2573–76 (2019) (describing the limited circumstances in which the parties may supplement the administrative record, none of which apply here).

Pleasant is indebted for six federal student loans totaling $30,529. *Id.* at 68–69. The loans were obtained to pay for educational expenses at the University of West Florida. *Id.* The first two loans originated in September 2012, with his electronic signatures on a Master Promissory Note (MPN). *Id.* at 66–69. The MPN lists "Timothy B. Pleasant" as the borrower and "caligirlie1@yahoo.com" as the email contact. *Id.*; Ex. A to Dkt. 6 (unredacted MPN). Pleasant told DOE that "caligirlie1@yaho.com" was his ex-wife's email address. AR at 12. The MPN only has a digital signature, so it does not contain Pleasant's (or anyone's) handwritten signature. *Id.* at 66–69. In the year after Pleasant obtained the first two loans, DOE awarded him four further loans on the same MPN. AR at 69, 82–87, 98, 116.

DOE assigned Great Lakes Educational Services, Inc., to serve as Pleasant's federal loan servicer. Great Lakes sent Pleasant multiple billing statements and delinquency notices over the next several years. *Id.* at 94–96.

DOE's investigation concluded that Pleasant's precise complaints about his ex-wife's actions changed over time. He first contacted the Santa Rosa County (FL) Sheriff's Office in December 2014 and alleged that his wife stole his Higher One card, the debit card to which the loan funds were dispersed, and made several unauthorized transactions on it. *Id.* at 57. (Pleasant told DOE that he believed at the time of his report to the Sheriff's Office that only his Pell Grants were dispersed to his Higher One card, not any kind of loan, *Id.* at 18). Then, in January 2015, Pleasant contacted Higher One and alleged that Heather and her son "collaborated in the theft of my Higher One card" during "the month of September, 2014." *Id.* at 57–58. The Sheriff's Office closed the case after Pleasant reported that Higher One had refunded his card. *Id.* at 23.

Pleasant never told the Sheriff's Office or Higher One that the loans in general were not

his—only that the specific charges on the Higher One card were not. *Id.* at 57.

Later, in November 2015, Pleasant challenged his obligation for the loans themselves for the first time. At that time, he submitted an "Identity Theft Complaint and Affidavit" to Great Lakes. *Id.* at 16–65. He alleged that he did not apply for the loans, that his wife had applied for them without his knowledge or consent, and that he had only applied for Pell Grants. *Id.* at 17–19. Great Lakes investigated the claim and concluded that Timothy Pleasant (not Heather Pleasant) applied for the loans. *Id.* at 14–15. In January 2016, Great Lakes denied Pleasant's petition. *Id.* Pleasant then appealed the decision to DOE, and DOE performed a new investigation. *Id.* at 12–13. DOE concluded that Pleasant failed to establish that he did not apply for, know about, or benefit from the loans—the requirements for discharge under 34 C.F.R. § 685.215(c)(5). *Id.* at 3, 7–9. Of particular importance to DOE's investigation was the fact that Pleasant never obtained a "judicial determination" that he had been the victim of identity theft, which the regulations required him to do before being eligible for discharge on the basis of identity theft. *Id.* at 7. DOE issued its final decision in April 2016. *Id.*

Subsequently, Pleasant asked Great Lakes to reconsider his petition, but Great Lakes again upheld its decision not to discharge his loans. *Id.* at 1–2, 4–6.

## II. LEGAL STANDARD

### A. Summary Judgment and the APA

When a court reviews the decision of an administrative agency, "a motion for summary judgment stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Piedmont Envtl. Council v. U.S. Dep't of Transp.*, 159 F. Supp. 2d 260, 268 (W.D. Va. 2001); *see also Dep't of Commerce v. New York*, 139 S. Ct. at 2573–76 (2019). While in administrative proceedings before an agency "it is the

4

role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record," in a plaintiff's challenge to that final agency action under the APA, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (cleaned up). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citations omitted).

B.  Review under the APA

The APA waives sovereign immunity for the limited purpose of judicial review of a final agency action. Under the APA, a party may seek "judicial review" of a "final agency action." 5 U.S.C. § 704. Review under the APA is "ultimately narrow and highly deferential." *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014); *see also Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 422 (4th Cir. 2012). The Court may only set aside an agency's decision under the APA if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In determining whether an agency action is arbitrary, capricious, or otherwise an abuse of discretion under the APA, a reviewing court must ensure that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action. *N.C. Wildlife Fed'n v. N.C. Dep't of Transp.*, 677 F.3d 596, 501 (4th Cir. 2012) (alteration in original) (quoting *F.C.C. v. Fox Television Stations, Inc.*, 566 U.S. 502, 513 (2009)). An agency's interpretation of its own regulations is controlling unless "plainly erroneous or inconsistent with the regulation." *Kisor v. Wilkie*, 588 U.S. ___ ; 139 S. Ct. 2400, 2415 (2019) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

So long as the agency "provide[s] an explanation of its decision that includes a rational connection between the facts found and the choice made," its decision should be sustained. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) *(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted). The Court's review is particularly deferential when, as is the case here, "resolution of th[e] dispute involves primarily issues of fact" that implicate "substantial agency expertise," *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 376–77 (1989), and the agency is tasked with balancing often-competing interests. *See Hells Canyon Alliance v. U.S. Forest Serv.*, 227 F.3d 1170, 1182 (9th Cir. 2000). The Court may not substitute its policy judgment for that of the agency when the policy is rational. *Chevron, USA., Inc. v. Nat. Res. Def. Counsel, Inc.*, 467 U.S. 837, 865–66 (1984).

The regulations in question in this case are contained in 34 C.F.R. §§ 685.215(a)(i)(v) and 685.215(c)(5)(i). Section 685.215(a)(i)(v) provides that "the Secretary discharges a borrower's (and any endorser's) obligation to repay a direct loan . . . if the school falsely certifies the eligibility of the borrower[.]"; the school falsely certifies the eligibility of the borrower when, among other circumstances, the school "[c]ertifie[s] the eligibility of a student for a Direct Loan as a result of the crime of identity theft committed against the individual[.]" Section 685.215(c)(5)(i) provides the requirements for an alleged borrower to prove identity theft:

> (c) To qualify for discharge under this paragraph, the borrower must submit to the Secretary an application for discharge on a form approved by the Secretary. The application need not be notarized but must be made by the borrower under penalty of perjury; and in the application, the borrower's responses must demonstrate to the satisfaction of the Secretary that the requirements in paragraph (c)(1) through (7) of this section have been met. If the Secretary determines the application does not meet the requirements, the Secretary notifies the applicant and explains why the application does not meet the requirements.
>
> . . .

(5) Identity theft.

    (i) In the case of an individual whose eligibility to borrow was falsely certified because he or she was a victim of the crime of identity theft and is requesting a discharge, the individual must—

        (A) Certify that the individual did not sign the promissory note, or that any other means of identification used to obtain the loan was used without the authorization of the individual claiming relief;

        (B) Certify that the individual did not receive or benefit from the proceeds of the loan with knowledge that the loan had been made without the authorization of the individual;

        (C) Provide a copy of a local, State, or Federal court verdict or judgment that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft; and

        (D) If the judicial determination of the crime does not expressly state that the loan was obtained as a result of the crime of identity theft, provide—

            (1) Authentic specimens of the signature of the individual, as provided in paragraph (c)(2)(ii) of this section, or of other means of identification of the individual, as applicable, corresponding to the means of identification falsely used to obtain the loan; and

            (2) A statement of facts that demonstrate, to the satisfaction of the Secretary, that eligibility for the loan in question was falsely certified as a result of the crime of identity theft committed against that individual.

### III.  DISCUSSION

#### A.  Applicability of 34 C.F.R. § 685.215(c)(5)(i)

The first issue in this case is whether DOE properly determined that 34 C.F.R. § 685.215(c)(5)(i) governed whether the agency should discharge Pleasant's student loans. Pleasant argues that § 685.215 was never intended to govern cases like his, where, in his characterization, there are only "claims of forgery not related to a school's false certification of eligibility." Dkt. 26 at 10.

In general, an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). However, under *Kisor v. Wilkie*, 588 U.S. ___; 139 S. Ct. 2400, 2414 (2019), *Auer* deference "can only arise if a regulation is genuinely ambiguous." *See Romero v. Barr*, 937 F.3d 282, 291 (4th Cir. 2019) (applying *Kisor* analysis). A regulation is only "genuinely ambiguous" when uncertainty remains about the meaning of the regulation "even after a court has resorted to all the standard tools of interpretation," including consideration of the "text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Kisor*, 139 S. Ct. at 2414–15. "If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law." *Id*. at 2415.

Thus, the Court's first task is to "determine whether the regulation itself is unambiguous; if so, its plain language applies." *Romero,* 937 F.3d at 291 (quoting *Ohio Valley*, 556 F.3d at 193). Here, § 685.215 is unambiguous. The regulation clearly governs disputes where an alleged borrower seeks discharge of their loans for alleged identity theft, as Pleasant does. The regulation first states that the Secretary of Education "discharges a borrower's (and any endorser's) obligation to repay a direct loan . . . if the school falsely certifies the eligibility of the borrower[.]" 34 C.F.R. § 685.215(a)(i)(v). The regulation further states that a school "falsely certifies the eligibility of the borrower" when (among other circumstances) the school "[c]ertifie[s] the eligibility of a student for a Direct Loan as a result of the crime of identity theft committed against the individual[.]" *Id.* Then, the regulation provides the process for determining whether the alleged borrower was the victim of identity theft in § 685.215(c)(5)(i).

The regulation is unambiguous. It clearly sets out what it governs (when DOE may

discharge student loans on the basis of identity theft) and the process for making that determination. And the regulation clearly applies to Pleasant's case, because he seeks discharge of his student loans because of alleged identity theft. Pleasant makes much ado about the fact that his case is not one where the school has committed some sort of fraud, and thus he believes that § 685.215 does not apply (*see* Dkt. 26 at 15), but that is a plain misreading of the regulation. The school having "falsely certifie[d] the eligibility of the borrower" only means that the school certified the borrower when the borrower was ineligible, not that the school itself committed some kind of fraud—this is evident by the fact that the regulation identifies identity theft by a third party as one of the circumstances in which the school "falsely certifies the eligibility of the borrower." 34 C.F.R. § 685.215(a)(i)(v). The school only "falsely certifies the eligibility of the borrower" in cases of identity theft in the sense that the school certifies the "borrower" when the "borrower" (the victim of identity theft) was not the one who applied for the loans, not in the sense that the school committed some sort of intentional fraud. Thus, the regulation is unambiguous on its face, and so "it just means what it means." *Kisor*, 139 S. Ct. at 2415.

The fact that several federal district courts have held that DOE properly applied 34 C.F.R. § 685.215 (or analogous regulations) to identity theft disputes also supports the unambiguity of the regulation. *See, e.g.*, *Johnson v. U.S. Dept. of Educ.*, 2018 WL 3420016, at *3 (D. Md. July 13, 2018) (where the plaintiff "failed to comply with the requirements under the Federal Direct Loan Program . . . for an administrative discharge of a student loan on the basis of identity theft" pursuant to the regulations set out in § 685.215(c)); *Castagnola v. Educ. Credit Mgmt. Corp.*, 2013 WL 3288165 at *3 (S.D. Ohio 2013) (holding that a similar regulation regarding another educational loan program "provide[s] that borrowers may obtain false-certification discharges by proving that the signatures on their loan documents are

9

unauthorized"). Thus, because §685.215 is unambiguous, the Court does not need to apply *Auer* deference to find in DOE's favor on this issue. *Kisor*, 139 S. Ct. at 2415.

As a final note here, Pleasant also argues that § 685.215 does not govern the dispute because more recent DOE regulations governing forgery should apply, not the regulations governing identity theft. Dkt. 26 at 10–11. Indeed, DOE set out new regulations in 2020 governing claims of forgery that fall short of identity theft. *See* Federal Student Aid Programs, 71 Fed. Reg. 64378-01. But the problem is that Pleasant never sought relief from the agency on the basis of those regulations—he submitted an "Identity Theft Victim's Complaint and Affidavit," which could have afforded him relief on the basis of identity theft, not a "Loan Discharge Application: Forgery" which might have afforded him relief on the basis of forgery. Dkt. 27 at 2–3. DOE applied the regulations governing identity theft rather than forgery because that was the avenue that Pleasant himself pursued.

In essence, Pleasant has not exhausted his administrative remedies with respect to the forgery claim—only the identity theft claim. Under 5 U.S.C. § 704, the Court may only review "final" agency decisions. The agency's decision with respect to the forgery claim is not "final"—it has not even been initiated. The only question properly before the Court, then, is whether DOE correctly decided to apply the identity theft regulations in § 685.215 after Pleasant requested that DOE perform an identity theft investigation. And, as discussed, those were the correct regulations to apply to his dispute.

## B. DOE's Application of the Regulations

The next issue is whether DOE applied the regulations set forth in 34 C.F.R. § 685.215(c)(5)(i) in an arbitrary or capricious manner. Pleasant argues that DOE's application of the regulations—and its factfinding process in general—were inadequate. Dkt. 26 at 14–23.

While Pleasant seems to argue that the Court's analysis should center on whether there are disputed issues of fact regarding his underlying identity theft claim (see Dkt. 26 at 2–6), that is not the correct standard of review. Rather, the correct standard under the APA is whether DOE's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Where the plaintiff asserts a challenge to a final agency action pursuant to the APA, "it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club*, 59 F. Supp. 2d at 90 (cleaned up). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citations omitted).

To determine whether the decision was arbitrary and capricious, the Court must "consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," *State Farm*, 63 U.S. at 43. The Court may not overturn an agency's decision just because facts are disputed. Instead, the Court must be particularly deferential when "resolution of th[e] dispute involves primarily issues of fact" that implicate "substantial agency expertise." *Marsh*, 90 U.S. at 376–77. So long as the agency "provide[s] an explanation of its decision that includes a rational connection between the facts found and the choice made," its decision should stand. *Ohio Valley*, 556 F.3d at 192. "[T]he Supreme Court has instructed that '[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.'" *Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 514–15 (4th Cir.

2011).

Here, DOE's denial of Pleasant's claim, after applying the 34 C.F.R. § 685.215(c)(5)(i) procedure, was anything but arbitrary or capricious. That provision requires that an alleged borrower meet four enumerated elements to have their loans discharged for identity theft. The alleged borrower must (1) certify that they "did not sign the promissory note" or that any other "means of identification" were used to obtain the loan without their permission; (2) certify that they "did not receive or benefit from the proceeds of the loan with knowledge that the loan had been made" without their authorization; (3) "[p]rovide a copy of a local, State, or Federal court verdict or judgment that conclusively determines that . . . [they were] the victim of a crime of identity theft,"; and (4), if the "judicial determination of the crime does not expressly state that the loan was obtained as a result of the crime of identity theft," provide an "authentic signature . . . corresponding to the means of identification falsely used to obtain the loan" and a "statement of facts that demonstrate, to the satisfaction of the Secretary, that eligibility for the loan in question was falsely certified as a result of the crime of identity theft." 34 C.F.R. § 685.215(c)(5)(i).

The Court's analysis of DOE's application of the regulations begins and ends with the requirement that the alleged borrower provide a copy of a judicial determination regarding their claim of identity theft. The regulation's third element requires that the alleged borrower provide a judicial verdict or judgment that conclusively determines that they were a victim of a crime of identity theft. 34 C.F.R. § 685.215(c)(5)(i)(C). It is undisputed that Pleasant has provided no such record. Thus, he plainly failed to meet the third requirement for discharge.

In addition, the fourth element of the discharge regulations does not relieve an alleged borrower from the burden of having to provide a judicial determination. Rather, it provides an alternative to providing a judicial determination that "expressly state[s]" that the alleged

12

borrower was a victim of identity theft if the alleged borrower provides a statement of facts that "demonstrate[s], to the satisfaction of the Secretary [of Education], that eligibility for the loan in question was falsely certified as a result of identity theft committed against that individual." 34 C.F.R. § 685.215(c)(5)(i)(D). In other words, the fourth element provides a path to relief for an alleged borrower who can provide a judicial determination that includes "at least some support of the identity theft claim," even if the determination is not conclusive, if they can provide other facts supporting the claim. *Nomesiri v. U.S. Dept. of Education*, 2021 WL 5771655 at *8 (E.D. Cal. Dec. 6, 2021) (recommending in Report & Recommendation that the Court deny Plaintiff's claim because he failed to provide a judicial determination that he had been the victim of identity theft). But the alleged borrower must still provide a judicial determination under this path to relief. *Id.* (noting that under the fourth element, a judicial determination "is still necessary."). Again, Pleasant did not provide DOE any sort of judicial determination regarding his identity theft claim.

   Thus, DOE's application of the regulations was neither arbitrary nor capricious—Pleasant's failure to provide a judicial determination was dispositive. Even if Pleasant could show that DOE's factual investigation was somehow insufficient, his claim would still fail because he has not provided a judicial determination that he was the victim of the crime of identity theft.

## IV. CONCLUSION

In sum, DOE applied the correct regulations to Pleasant's request that it discharge his loans on the basis of identity theft and applied those regulations in a manner that was neither arbitrary nor capricious.

The Clerk of Court is directed to provide a copy of this memorandum opinion to all counsel of record. A corresponding order will accompany this opinion.

Entered this 4th day of January 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE